**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAFAEL GUERRA-JAVALERA, )<br>)<br>Defendant. )<br>_____) | CRIMINAL ACTION<br><br>Case No. 03-20054–02-KHV |

**MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE**

On March 24, 2006, a jury found defendant guilty of conspiracy to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii) and 21 U.S.C. § 846 (Count 1), and distributing 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count 2). The matter comes before the Court on defendant's Motion For New Trial (Doc. #119) and Motion For Judgment Of Acquittal (Doc. #120), both filed April 24, 2006. After carefully considering the parties' briefs, the Court finds that defendant's motions should be sustained in part.

**Standards For Motions For New Trial**

Rule 33, Fed. R. Crim. P., provides that a motion for a new trial may be granted "if required in the interest of justice." A motion for new trial under Rule 33 is not regarded with favor and is granted only with great caution. See United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. See id.

**Standards For Motions For Judgment Of Acquittal**

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., the Court cannot weigh the evidence or consider the credibility of witnesses. See Burks v. United States, 437 U.S. 1, 16 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." United States v. White, 673 F.2d 299, 301 (10th Cir. 1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government. See United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128 (1986). Acquittal is proper only if the evidence implicating defendant is nonexistent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt." White, 673 F.2d at 301.

**Factual Background**

The evidence at trial may be summarized as follows:

On November 21, 2002, Missouri state trooper Demond Tauber stopped John Osowski for speeding on Interstate Highway 70, about 100 miles east of Kansas City. Tauber smelled fresh and burnt marijuana in Osowski's vehicle and observed a bulging envelope on the passenger seat. Osowski admitted that the envelope contained money and that he had marijuana in the vehicle. Tauber then called trooper Rich Ferrari, who came to the scene. Osowski told Ferrari that he had just delivered 25 pounds of marijuana (11.34 kilograms) to "Meredith" in St. Louis.[1] Osowski stated that Michael Senner, who ran a bar in Kansas City, Kansas, had hired him to deliver the marijuana to

---

[1] Although the statute is based on kilograms, much of the trial testimony refered to pounds of marijuana. Throughout this memorandum and order the Court sets out conversion figures in parenthesis. The Court takes judicial notice that one kilogram equals 2.2046 pounds, and one pound equals .4536 kilograms.

Meredith and return with a cash payment. Osowski agreed to cooperate with law enforcement officials and to make a controlled delivery which involved returning to Senner approximately four pounds of rejected marijuana (1.81 kilograms) and $10,400.00 in cash.

On the morning of November 22, 2002, Osowski and Senner met at Senner's residence. Osowski gave Senner the marijuana and cash and officers arrested Senner. They searched Senner's residence and bar, and seized $96,540.00 from Senner's residence and two pounds of marijuana (.90 kilograms) from the bar.

After Senner's arrest, he told Ferrari that he had sold about 3,000 pounds of marijuana (1,360.8 kilograms) over the preceding year and a half, and defendant Rafael Guerra-Javalera had supplied the marijuana. Senner agreed to cooperate with officials to make a controlled buy from defendant, who was then in Mexico. Senner contacted defendant and defendant's brother, Luis Guerra-Javalera, to set up the controlled buy. After a series of phone calls, defendant told Senner that Luis would deliver the marijuana. Luis delivered about 150 pounds of marijuana to Senner (68.04 kilograms) and officers then arrested Luis. Several weeks after Senner's arrest, he told law enforcement officers that he had not really distributed 3,000 pounds (1,360.8 kilograms), but had only distributed about 700-800 pounds (317.52 - 362.88 kilograms).

Senner's trial testimony included widely varying amounts as to drug quantity. Senner testified that he initially said that he had distributed 3,000 pounds (1,360.8 kilograms) because defendant told him that he was going to begin bringing 3,000 pounds per trip. Senner also testified that in mid-November of 2002, defendant had told him that he would be getting 3,000 pounds of marijuana in the next couple of days. Senner testified that defendant had delivered marijuana to his bar over a hundred times. He testified that the average order was ten pounds (4.54 kilograms) but

3

ranged from two pounds (.91 kilograms) to the 150 pounds (68.04 kilograms) that he ordered on November 22, 2002. Senner's testimony that defendant made more than 100 deliveries averaging ten pounds suggests a figure of 1,000 pounds plus the 150 pounds involved in the controlled buy, which Senner said was in addition to the other 100 deliveries. The total would thus be 1,150 pounds (521.64 kilograms). At another point, Senner testified that "Dandy," the person who weighed marijuana for his marijuana deals, had tallied 524 pounds (237.69 kilograms) of marijuana. Senner testified that he had sold about 200 pounds of marijuana (90.72 kilograms) before Dandy began working for him. Senner also testified that defendant had asked him to purchase a vehicle so that defendant could transport marijuana in 3,000 pound amounts (1,360.8 kilograms) each trip. Further, Senner testified that shortly before his arrest, defendant had told him that he had 3,000 pounds coming in from Mexico on a bus.

Senner was convicted of conspiracy to distribute 1,000 kilograms or more of marijuana (2,204.6 pounds) and was serving a ten-year sentence. Throughout trial, defendant suggested that Senner was a drug dealer whose testimony was not credible and that Senner was testifying against defendant to reduce his own sentence.

The government offered evidence that on June 28, 2001, law enforcement officials in New Mexico stopped defendant's vehicle and seized 79.4 pounds of marijuana (36.02 kilograms). Defendant argued that the evidence was not admissible because the search and seizure violated his Fourth Amendment rights. The government profered evidence that defendant had been convicted on the basis of the stop and that defendant could not re-litigate the constitutionality of the stop. The Court agreed and found that evidence that defendant possessed almost 80 pounds of marijuana on June 28, 2001 (within the time frame of charged conspiracy to distribute marijuana) was relevant and

4

probative.

At the close of the government's case, defendant made a motion for judgment of acquittal on both counts. As to Count 1, defendant argued that Senner had testified that he distributed a total of 750 pounds of marijuana (340.20 kilograms), much less than the 1,000 kilograms charged. As to Count 2, defendant argued that evidence showed that defendant distributed no more than about 175 pounds of marijuana (79.38 kilograms) on or about November 22, 2002, which was less than the 100 kilograms charged. The Court overruled defendant's motions and submitted the case to the jury.

The jury found defendant guilty on both counts. As to Count 1, the jury found that between March of 2001 and November 22, 2002, defendant conspired to distribute 1,360 kilograms of marijuana (2,998.26 pounds). As to Count 2, the jury found defendant guilty of distributing 72 kilograms of marijuana (158.73 pounds) on or about November 22, 2002.

Defendant seeks judgment of acquittal on both counts. On Count 1, defendant argues that in determining the amount of marijuana involved in the conspiracy, the jury must have relied upon Senner's hearsay statement to Ferrari that he had distributed 3,000 pounds of marijuana supplied by defendant (1,360.8 kilograms). On Count 2, defendant argues that the evidence is not sufficient to support the jury's finding that defendant distributed 72 kilograms of marijuana (158.73 pounds).

Defendant also seeks a new trial, arguing that (1) the prosecutor violated his due process rights by stating in closing argument that another jury had found Senner guilty of conspiracy to distribute 1,000 kilograms of marijuana, and (2) the Court erred in admitting evidence that on June 28, 2001, law enforcement agents seized almost 80 pounds of marijuana (36.29 kilograms) during the stop of defendant's vehicle in New Mexico.

**Analysis**

5

**I.     Motion For Judgement Of Acquittal**

    A.     Count 1

Defendant argues that the Court erred in not specifically instructing the jury that Senner's prior statement to Ferrari – that he had distributed 3,000 pounds of marijuana supplied by defendant (1360.8 kilograms) – was admissible only to impeach Senner's credibility and not as substantive evidence of the amount of marijuana involved in the conspiracy.

In reviewing challenges to jury instructions, the Court must look at the jury instructions as a whole and determine if the jury likely was misled. See United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994) (citing United States v. Mullins, 4 F.3d 898, 900 (10th Cir. 1993)).  A new trial is not appropriate where the instructions as a whole properly state the law and provide the jury an "intelligent, meaningful understanding of the applicable issues and standards." United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997) (quoting United States v. Laughlin, 26 F.3d 1523, 1528 (10th Cir. 1994)).  The Court will grant a new trial only if it has "substantial doubt that the jury was fairly guided." Smith, 13 F.3d at 1424 (quoting Mullins, 4 F.3d at 900).

The government argues that it did not offer evidence of Senner's prior statement to impeach Senner, but "as a historical overview of what Senner told the agents and how the investigation progressed." Government's Brief, Doc. #126, at 6.  Senner's statement to Ferrari, if considered as substantive evidence, is inadmissable hearsay. See Fed. R. Evid. Rule 801 (hearsay is statement, other than one made by declarant while testifying at the trial, offered to prove truth of matter asserted).

The government points out that defendant did not file any pretrial motions to exclude evidence of Senner's prior inconsistent statement, and that defendant did not contemporaneously

object to introduction of this evidence. Further, defendant did not object to the government's use of the prior inconsistent statement during closing argument.[2] As a result, the Court may review defendant's claims only for plain error. United States v. Roberts, 185 F.3d 1125, 1143 (10th Cir. 1999).

Under the plain error standard, there must be (1) an error (2) that is plain, which means "clear" or "obvious" under current law, and (3) that affects substantial rights. United States v. Fabiano, 169 F.3d 1299, 1303 (10th Cir. 1999). For an error to impact substantial rights, typically "[i]t must have affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993). Defendant bears the burden of proving that the error had such an effect. Id. Where defendant did not request the instruction or object to its absence, the Court must examine the entire record to determine whether failure to give the cautionary instruction was so egregious as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. United States v. Davis, 755 F.2d 1452, 1457 (10th Cir. 1985) (failure to sua sponte give cautionary instruction

---

[2] During closing argument, the prosecutor pointed out that when Senner first spoke to law enforcement agents after his arrest, Senner said that he had distributed 3,000 pounds of marijuana (1,360.8 kilograms) over the last year and a half. The prosecutor then noted that weeks later, Senner said that the amount he distributed was not 3,000 pounds, but 700 pounds (317.52 kilograms). The prosecutor argued that in subsequent interviews Senner minimized the amount, "but when he first met with agents, when he gave that quotation of 3,000 pounds, does that make sense? I assert to you, based upon the evidence, that it does make sense. That this conspiracy distributed a thousand – at least a thousand kilos and most assuredly more than a thousand kilos." Transcript Government's Closing Argument at 11.

In rebuttal, the prosecutor also argued that Senner told agents that he had sold at least 3,000 pounds of marijuana.

In other words, notwithstanding the government's protestations to the contrary, its closing argument cited Senner's hearsay statements as substantive evidence of the amount of drugs involved in the conspiracy.

concerning substantive use of codefendants' guilty pleas not reversible error in light of overwhelming evidence of guilt).

Defendant argues that the Court committed plain error when it failed to instruct the jury that it could not consider the prior statement as substantive evidence. Defendant relies upon United States v. Lipscomb, 425 F.2d 226, 227 (6th Cir. 1970). In Lipscomb, defendant was charged with interstate transportation of a stolen car. At trial, a government witness, Scruggs, testified that he had seen defendant driving the car, but denied that defendant had admitted to him that he had stolen the car. The government then called an FBI agent who testified that Scruggs had told him that defendant had admitted that he had stolen the car. Defendant did not request a specific cautionary instruction and the Court did not give one. In the jury instructions, however, the trial court stated that a witness could be impeached by showing that the witness had testified in a manner inconsistent with statements he had previously made, and that if the jury found that any witness had been impeached, it could disregard the testimony of the witness. On appeal, the Sixth Circuit held that the trial court committed plain error in failing to instruct the jury that it could not consider Scrugg's extra-judicial statements as substantive evidence. In that regard, the Sixth Circuit noted that the government's case was weak and the impeachment statement was "extremely damaging" because it established the substantive elements of the crime. Id. (reversing judgment and remanding for new trial).

The government argues that unlike Lipscomb, the Court in this case provided a sufficient cautionary instruction. Government's Brief, Doc. #126, at 7-8. The Court's general instruction on impeachment by prior inconsistent statements, however, incorrectly stated the law. The instruction stated as follows:

8

> The credibility of a witness may be attacked by evidence that on some prior occasion he or she made a statement or acted in a manner which is inconsistent with his or her testimony in this case on a matter material to the issues.
>
> You may consider evidence of this kind, in connection with all the other evidence, as evidence of the truth of what the witness said in his or her prior inconsistent statement. If you believe that any witness's testimony has been discredited, you may reject all or part of the testimony of that witness, and you may give the testimony such credibility as you think it deserves.

Court's Instructions To The Jury, Doc. #111, at 6. The instruction did not clearly instruct the jury that it could not consider prior inconsistent statements as substantive evidence.

The Court committed plain error by failing to instruct the jury that it could not consider Senner's prior inconsistent statements as substantive evidence. See United States v. Mitchell, 113 F.3d 1528, 1531 (10th Cir. 1997) (prior inconsistent statements may be used to impeach witness but not as substantive evidence). The Court must therefore determine whether the error impacted defendant's "substantive rights," that is, whether the alleged error affected the outcome of the proceeding.

In addition to his initial statement to Ferrari, Senner testified that (1) defendant asked him to buy a bus so that defendant could haul 3,000 pounds of marijuana at a time (1,360.8 kilograms); (2) shortly before Senner's arrest, defendant told him that defendant was going to get 3,000 pounds of marijuana each time he returned from Mexico; and that (3) a few days before Senner's arrest, defendant told him that he was getting in 3,000 pounds of marijuana from Mexico soon. None of this other evidence, however, demonstrates that defendant agreed to distribute 3,000 pounds of marijuana as part of the conspiracy charged in this case. See United States v. Arras, 373 F.3d 1071, 1074 (10th Cir. 2004) (prosecution must prove beyond a reasonable doubt that alleged conspirator

9

agreed to distribute certain quantity of drugs); cf. United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995) (so long as verdict had basis in facts and bears sufficient indicia of reliability, jury entitled to estimate quantity of marijuana involved in conspiracy). The record contains no evidence – other than Senner's hearsay statement to agent Ferrari that he had sold about 3,000 pounds of marijuana supplied by defendant (1360.8 kilograms) – that defendant was involved with a conspiracy to distribute 1,000 kilograms or more of marijuana. The Court therefore cannot find that its failure to correctly instruct the jury did not affect the outcome of the trial as to Count 1.

At trial, the Court properly admitted evidence which was sufficient for a jury to find that defendant conspired to distribute at least 1,229.4 pounds of marijuana (557.66 kilograms), but not that the conspiracy involved 1,000 kilograms or more (2,204.6 pounds), the amount charged in the indictment. Therefore, defendant's conviction on Count 1 cannot stand. The parties do not specifically address whether in these circumstances defendant is entitled to (1) judgment of acquittal as to Count 1, (2) a new trial on Count 1 as to a lesser included amount, or (3) a sentence under 841(b)(1)(B) or (D). See United States v. Jones, 235 F.3d 1231, 1236 (10th Cir. 2000) (quantity of drugs is essential element of offense if it exposes defendant to heightened maximum sentence under § 841(b)(1)(A) or (B)); see also United States v. Ramos-Palomino, No. 01-20010-03, WL 699046 at *2 (D. Kan. 2001), aff'd, 51 Fed. Appx. 814 (10th Cir. 2002). **The Court therefore orders the government to show cause in writing on or before August 31, 2006 why the Court should not enter a straight judgment of acquittal as to Count 1. Defendant shall reply to the government's response on or before September 6, 2006.**

      B.      Count 2

Defendant seeks judgment of acquittal on Count 2, arguing that the evidence is not sufficient to support the jury's finding that on or about November 22, 2002, he distributed 72 kilograms of marijuana (158.73 pounds). The government presented evidence that Senner ordered 150 pounds of marijuana from defendant (68.04 kilograms) on or about November 22, 2002, and that defendant's brother Luis delivered about 149 pounds of marijuana to Senner (67.59 kilograms). The government also presented evidence that defendant supplied Senner 25 pounds of marijuana (11.34 kilograms) which Osowski delivered to Meredith in St. Louis. Thus, the record contains evidence that on or about November 22, 2002, defendant supplied 174 pounds of marijuana (78.93 kilograms). Here, the quantity which the jury found is within the range of the evidence presented at trial. The Court therefore denies defendant's motion for judgment of acquittal as to Count 2.

## II.    Motion For New Trial

Defendant claims that he entitled to a new trial because (1) the government told the jury in closing argument that another jury had found Senner guilty of conspiracy to distribute more than 1,000 kilograms of marijuana (2,204.6 pounds) and (2) the Court erred in admitting evidence that on June 28, 2001, law enforcement officers stopped defendant in New Mexico and seized 79.4 pounds of marijuana (36.02 kilograms).

### A.    Prosecutor's Statement About Senner's Conviction During Closing Argument

Defendant argues that the prosecutor violated his due process rights by stating during closing argument that another jury had found Senner found guilty of conspiracy to distribute more than 1,000 kilograms (2,204.6 pounds), the same crime with which defendant was charged in Count 1.

In final argument, the prosecutor stated as follows:

11

> You know, the big fish here is [defendant]. He's the one that was orchestrating these drug deals, he's the one that was bringing the marijuana in, he's the one that is involved in this conspiracy. Michael Senner was convicted of conspiracy to distribute a thousand kilos of marijuana by a jury just like you.

Transcript of Government's Closing at 16. At that point, defense counsel objected. The prosecutor responded, "Judge, there was evidence of that." Id. Defense counsel stated: "There's no preliminary indication of guilt on my client's behalf." Id. The government responded: "And I'm not arguing that, Judge." Id. The Court asked the prosecutor to clarify her point, and the prosecutor continued her argument to the jury:

> He was convicted in a jury just like this and he was sentenced to serve ten years in jail. He didn't get off scott free. He didn't get to walk out after he talked to authorities. He has no expectation about what will happen after today. And that's not for you to decide. Your only decision in this case is to decide whether this defendant (indicating) is guilty. And the government would urge you to find the defendant guilty as charged. Thank you.

Id. at 16-17.

A codefendant's guilty plea or conviction may not be used as substantive evidence of a defendant's guilt. United States v. Baez, 703 F.2d 453, 455 (citing United States v. Halbert, 640 F.2d 1000, 1004 (9th Cir. 1981)). If the codefendant testifies, however, either the government or the defense may elicit evidence of a guilty plea or conviction for the jury to consider in assessing the codefendant's credibility as a witness. Baez, 703 F.2d at 455, United States v. Wiesle, 542 F.2d 61, 62 (8th Cir. 1976). Because of the potential for prejudice, cautionary instructions which limit the jury's use of the guilty plea to permissible purposes are critical. See Baez, 703 F.2d at 455 (citing Halbert, 640 F.2d at 1006-07). In United States v. Miranda, 593 F.2d 590 (5th Cir. 1979), the prosecutor improperly urged the jury to consider a coconspirator's convictions as proof of the

defendant's guilt. Although the defendant did not object, the Fifth Circuit found that the prosecutor's comments constituted plain error. See id. at 594-95.

In this case, evidence of Senner's conviction was admissible for purposes of assessing his credibility. The Court did not specifically instruct the jury that it could not use evidence of Senner's conviction as substantive evidence of defendant's guilt. Unlike in Miranda, however, the prosecutor did not urge the jury to consider Senner's conviction as proof of defendant's guilt. Rather, the government was responding to defendant's argument that Senner was not credible because he had a motive to inculpate defendant in exchange for the possibility of reducing his own sentence. The government was pointing out that although Senner might receive a reduced sentence, he would still serve time. The Court finds that failure to instruct the jury not to consider evidence of Senner's conviction as evidence of defendant's guilt was therefore harmless.

B.    Admission of Evidence of Seizure Of Marijuana In New Mexico

Defendant asserts that the Court erred in admitting evidence that on June 28, 2001, law enforcement officers stopped defendant in New Mexico and seized 79.4 pounds of marijuana (36.02 kilograms). Defendant argues that the evidence is not admissible under 404(b), Fed. R. Evid., and that it was improperly obtained. Defendant cites United States v. Hill, 60 F.3d 672 (1995), for the proposition that under Rule 404(b), admission of evidence of possession of illegal drugs obtained through unlawful searches and seizures evidence is erroneous. Defendant fails to note that, in this case, defendant was actually convicted in a state court of possessing 79.4 pounds of marijuana (36.02 kilograms). Defendant is not entitled to re-litigate the propriety of the seizure which was the basis for his conviction. Further, the record contains evidence that the marijuana seized on June 28, 2001

was part of the conspiracy charged in Count 1, not extrinsic evidence for purposes of Rule 404(b). Plaintiff is not entitled to a new trial on this basis.

**IT IS THEREFORE ORDERED** that defendant's Motion For New Trial (Doc. #119) and Motion For Judgment Of Acquittal (Doc. #120) both filed April 24, 2006 be and hereby are **SUSTAINED IN PART**. Defendant's conviction on Count 2 stands. **The government is ordered to show cause in writing on or before August 31, 2006 why the Court should not enter a straight judgment of acquittal as to Count 1. Defendant shall reply to the government's response on or before September 6, 2006.**

Dated this 28th day of August, 2006, at Kansas City, Kansas.

s/Kathryn H. Vratil
Kathryn H. Vratil
United States District Court

14